UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------
RYAN O'DELL,                                          :
                                                      :
       Plaintiff,                                  : Civil Action No. 1:21-cv-8642
                                                      :
v.                                                    :
                                                      : **COMPLAINT FOR VIOLATIONS OF**
KRATON CORPORATION, DAN F. SMITH,                     : **SECTIONS 14(a) AND 20(a) OF THE**
SHELLEY J. BAUSCH, MARK A. BLINN,                     : **SECURITIES EXCHANGE ACT OF**
ANNA C. CATALANO, KEVIN M.                            : **1934**
FOGARTY, DOMINIQUE FOURNIER,                          :
JOHN J. GALLAGHER, III, KAREN A.                      : **JURY TRIAL DEMANDED**
TWITCHELL, and BILLIE I. WILLIAMSON,                  :
                                                      :
       Defendants.                                 :
---------------------------------------------------------  :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Kraton Corporation ("Kraton or the "Company") and the members Kraton board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Kraton by DL Chemical Co., Ltd. ("DL Chemical") and its affiliates.

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on October 20, 2021 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby DLC US, Inc. ("Merger Sub"), a wholly-owned subsidiary of DLC US Holdings, Inc. ("Intermediate Merger Subsidiary"), which in turn is a wholly owned subsidiary of DL Chemical, will merge with and into Kraton with Kraton surviving the merger and becoming an indirect wholly-owned subsidiary of DL Chemical (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Kraton common share issued and outstanding will be converted into the right to receive $46.50 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Kraton stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, J.P. Morgan Securities LLC in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Kraton stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Kraton common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Dan F. Smith has served as a member of the Board since September 2009 and is the Chairman of the Board.

11. Individual Defendant Shelley J. Bausch has served as a member of the Board since August 2017.

12. Individual Defendant Mark A. Blinn has served as a member of the Board since August 2017.

13. Individual Defendant Anna C. Catalano has served as a member of the Board since September 2011.

14. Individual Defendant Kevin M. Fogarty has served as a member of the Board since September 2009.

15. Individual Defendant Dominique Fournier has served as a member of the Board since February 2012.

16. Individual Defendant John J. Gallagher, III has served as a member of the Board since July 2011.

17. Individual Defendant Karen A. Twitchell has served as a member of the Board since December 2009.

18. Individual Defendant Billie I. Williamson has served as a member of the Board since August 2018.

19. Defendant Kraton is incorporated in Delaware and maintains its principal offices at 15710 John F. Kennedy Blvd., Suite 300, Houston, TX 77032.  The Company's common stock trades on the New York Stock Exchange under the symbol "KRA."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.     The Proposed Transaction**

22. Kraton manufactures and sells styrenic block copolymers, specialty polymers, and other products in the Americas, Europe, the Middle East, Africa, and the Asia Pacific. It operates in two segments, Polymer and Chemical. The Polymer segment offers performance products, including styrene-butadiene-styrene for paving and roofing application; styrene-isoprene-styrene for personal care application; ethylene-vinyl acetate, polyolefins, and metallocene polyolefins for

adhesives application; and specialty polymers, such as hydrogenated styrenic block copolymer, isoprene rubber, and isoprene rubber latex for use in medical and personal care products, adhesives, tackifiers, paints, and coatings. The Chemical segment provides pine-based specialty products that include rosin-based tackifiers for packaging and pressure-sensitive adhesive applications; terpene-based tackifiers for bookbinding, hygiene, and pressure-sensitive adhesive applications; alpha-methyl-styrene (AMS) resins for bookbinding and pressure-sensitive adhesive applications; and hot melt polyamides for flexible packaging, industrial, and road making applications. This segment also provides tall oil fatty acids; tall oil rosin; distilled tall oil; tall oil pitch; and rosin-based binders for the thermoplastic pavement marking submarket, as well as produces insoluble maleic-based tackifiers. In addition, this segment offers terpene-based tread enhancement resins and AMS-based tread enhancement additives; and dimer acids and terpene fractions for fuel additives, oilfield chemicals, mining fluids, coatings, metalworking fluids, and lubricants. It sells its products through various channels, including direct sales force, marketing representatives, and distributors under the Kraton brand. The Company was formerly known as Kraton Performance Polymers, Inc. and changed its name to Kraton Corporation in September 2016. Kraton was incorporated in 2009 and is based in Houston, Texas.

23. On September 2, 2021, Kraton announced that it had entered into a proposed transaction with DL Chemical:

> HOUSTON, Sept. 27, 2021 /PRNewswire/ -- Kraton Corporation (NYSE: KRA) ("Kraton"), a leading global sustainable producer of specialty polymers and high-value bio-based products derived from pine wood pulping co-products, today announced that it has entered into a definitive merger agreement (the "Merger Agreement") pursuant to which DL Chemical Co., Ltd. ("DL Chemical"), a subsidiary of DL Holdings Co., Ltd. (formerly Daelim Industrial Co., Ltd.), will acquire 100% of Kraton in an all-cash transaction implying an enterprise value of approximately $2.5 billion. Under the terms of the Merger Agreement, Kraton

stockholders will receive $46.50 in cash for each share of Kraton common stock they own. As part of the transaction DL Chemical has conveyed that they have fully committed financing.

"Following an extensive review of a wide-range of strategic alternatives focused on maximizing value for the benefit of our stockholders, Kraton's Board has determined that the sale of Kraton to DL Chemical is in the best interest of Kraton stockholders. We believe the transaction provides immediate and certain value for Kraton stockholders, and represents an attractive premium of approximately 50% over Kraton's unaffected market valuation as of early July," said Kevin M. Fogarty, Kraton's President and Chief Executive Officer. "Moreover, we believe DL Chemical has the industry presence and resources to continue to support the growth of Kraton's business on a global scale".

"Consistent with our longstanding goal of maximizing value for the benefit of our stockholders, over the years Kraton's Board and management team have actively evaluated a wide range of strategic alternatives. Today's announcement marks the culmination of the strategic review process for Kraton, resulting in a transaction that we believe provides significant value for Kraton stockholders. In addition, we believe the scale and strength of the combined company will also benefit our customers and our employees, as it will expand Kraton's global reach while creating a robust platform to further support investment in the existing innovation pipeline and provide for further expansion of sustainable offerings," said Dan F. Smith, Chairman of Kraton's Board of Directors.

"DL Chemical has been conducting the petrochemical business responsibly within the DL Group for 46 years. After acquiring Kraton's Cariflex business last year, we have successfully integrated that business within the DL Group," said Sang Woo Kim, Vice Chairman and Chief Executive Officer of DL Chemical. "We also have been highly interested in Kraton's specialty polymer and bio-based chemical business, and this combination will allow us to provide our customers with a wider range of innovative products, while adding the ability to serve a diverse range of end markets in over 70 countries worldwide."

The Merger Agreement was unanimously approved by Kraton's Board of Directors, which has recommended that Kraton stockholders vote in favor of the transaction. The acquisition is subject to certain customary closing conditions, including the receipt of stockholder and regulatory approvals, and is expected to close by the end of the first half of 2022.

> J.P. Morgan Securities LLC is acting as exclusive financial advisor, and King & Spalding LLP is acting as legal counsel to Kraton in connection with the transaction. Goldman Sachs is acting as financial advisor, and O'Melveny & Myers LLP is acting as legal counsel to DL Chemical in connection with the transaction.

\* \* \*

24. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Kraton's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25. On October 20, 2021, Kraton filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Kraton Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Kraton management and relied upon by J.P. Morgan in its analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company

Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Kraton management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. First, the Proxy Statement fails to disclose the reason that only Case C of the Company Projections were referenced by J.P. Morgan for its public trading multiples analysis and selected transaction analysis and why all four cases were referenced for its discounted cash flow analysis.

28. Further, for the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: EBITDA including IRSA, EBITDA excluding IRA, and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics ***and/or*** a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

29. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with

the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

30. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

31. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning J.P. Morgan' Financial Analysis*

32. With respect to J.P. Morgan's *Public Trading Multiples* analysis, the Proxy Statement fails to disclose the metrics and multiples for the companies selected and observed by J.P. Morgan for the analysis.

33. With respect to J.P. Morgan's *Selected Transaction Analysis*, the Proxy Statement fails to disclose the metrics and multiples for the transactions selected and observed by J.P. Morgan for the analysis.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34. With respect to J.P. Morgan's *Discounted Cash Flow Analysis* for the Company, the Proxy Statement fails to disclose: (i) a range of terminal values for the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rates of 1.5% to 2.5%; (iii) the inputs and assumptions underlying the range of discount rates ranging from 9.25% to 10.25% and 15.25% to 17.25% for the incremental projected cash flows for the breakthrough technologies included in each of the Case C and Case D Projections and the specialty polymer expansion project in Taiwan included in the Case D Projections; (iv) the Company's weighted average cost of capital; (v) Kraton's net debt and other adjustments as of June 30, 2021.

35. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

36. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

37. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or

misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

38. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by the financial advisors and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

39. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

40. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

41. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

42. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43. The Individual Defendants acted as controlling persons of Kraton within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Kraton, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Kraton, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

44. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

45. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Kraton, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations

alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

46. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

47. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

48. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

49. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

   B. Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

   C. Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

   D. Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

   E. Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 21, 2021         **MELWANI & CHAN LLP**

                 By:  /s *Gloria Kui Melwani*
                     Gloria Kui Melwani (GM5661)
                     1180 Avenue of Americas, 8th Fl.
                     New York, NY 10036
                     Telephone: (212) 382-4620
                     Email: gloria@melwanichan.com

                     *Attorneys for Plaintiff*